## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LAPHILL KNOX,

     Plaintiff,

           v.

MIRCOBILT CORPORATION,

     Defendant.

Civil Action No. 21-13317 (RK) (JBD)

<u>**OPINION**</u>

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendant Microbilt Corporation ("Defendant"). ("MSJ," ECF No. 33-1.) Defendant also filed a Statement of Material Facts in support of its Motion. ("Def. SOF," ECF No. 33-2.) Plaintiff Laphill Knox ("Plaintiff") filed a Response in Opposition, ("Opp.," ECF No. 41), a Response to Defendant's Statement of Material Facts, ("Resp. to Def. SOF," ECF No. 41-2), and a Supplemental Statement of Material Facts, ("Pl. SSOF," ECF No. 41-3). Defendant filed a Reply, ("Reply," ECF No. 43), and a Response to Plaintiff's Supplemental Statement of Material Facts, ("Resp. to Pl. SSOF," ECF No. 43-1). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I.   <u>BACKGROUND</u>

Defendant is a provider of "alternative credit data and risk management solutions." (Def. SOF ¶ 1.) As part of its business, Defendant provides customers with eviction data on requested persons. (*Id*. ¶ 2.) Defendant contracts with LexisNexis Risk Data Retrieval Services LLC ("LexisNexis" or "LN") to obtain "public records data relating to eviction actions nationwide."

(*Id*. ¶ 3.) Plaintiff contests the accuracy and reliability of LexisNexis's data. (Resp. to Def. SOF ¶¶ 2–3; *see also* Pl. SSOF ¶¶ 1–9.) Upon receiving a request from a customer about a particular housing applicant, Defendant requests that information from LexisNexis. (Def. SOF ¶ 4.) Thereafter, according to Defendant, it uses its "proprietary technology to match the applicant's records with the most consistent and available eviction data provided to [Defendant] from LexisNexis" based on "common identifying information between the input applicant data provided by [Defendant's] customer, and the data received from LexisNexis." (*Id*. ¶ 5.) According to Plaintiff, Defendant "has no procedures whatsoever to assure the accuracy or timeliness of the information that it receives from LN, and simply blindly passes along the unreliable LN information to its customers . . . ." (Resp. to Def. SOF ¶ 5.)

In 2020, Plaintiff applied for housing at various apartment complexes. (Def. SOF ¶ 10.) On April 23, 2020, Plaintiff submitted a rental application to Sunshine Apartments in California, in conjunction with which Plaintiff consented to a background check. (*Id*. ¶¶ 14–15.) At that time, Plaintiff had a TransUnion credit score of below 470 and had outstanding debts totaling more than $18,000. (Def. SOF ¶¶ 11–12.) Sunshine Apartments submitted a request for a background check from Apartment Owners Association of California, Inc. ("AOA"), which in turn, requested eviction data from Defendant. (*Id*. ¶ 16.) The report provided to AOA by Defendant contained information pertaining to the following forcible detainer action, also referred to as an eviction action. (*Id*. ¶ 17.)

In 2017, Plaintiff's former landlord, Evert Montclair LLC ("Evert"), filed a forcible detainer action against her in California Superior Court, County of San Bernardino, Fontana District (case number UDFS1701828). (*Id*. ¶ 8.) According to Plaintiff, she first filed a breach of contract action against Evert in 2017 due to the conditions in her apartment, and "[i]n response,

the landlord retaliated, and filed an eviction action." (Resp. to Def. SOF ¶ 8.) The parties settled the case, with Plaintiff and Evert entering into a "Stipulation For Entry of Judgment – Unlawful Detainer" (the "Eviction Record"). (*Id*. ¶ 9.) The Eviction Record reflects that Plaintiff would waive any claim to her security deposit, vacate the property, and dismiss her breach of contract complaint against Evert. (*Id*.) It also provides that the Eviction Record was and should remain sealed. (*Id*.; *see also* Resp. to Def. SOF ¶ 9.)

In April 2020, Sunshine Apartments denied Plaintiff's rental application. (SOF ¶ 20.) According to Defendant, Plaintiff's apartment applications "were repeatedly denied due to her poor credit profile." (*Id*. ¶ 13.) Also according to Defendant, Plaintiff has no knowledge as to the standards employed by Sunshine Apartments in considering its rental applicants. (*Id*. ¶ 24.) However, according to Plaintiff, the manager of Sunshine Apartments sent Plaintiff a text message with a photo of the Eviction Record when she informed Plaintiff that her rental application was denied. (*Id*. ¶¶ 48–50.) Thereafter, Plaintiff was homeless from late April 2020 until August 2020, and as a result was "humiliated and embarrassed," suffered conflict with her family, and was forced to use public restrooms and showers for months. (SSOF ¶¶ 51–54; *see also* "Pl. Depo.," ECF No. 41-7 at 140:16–25.)

On June 13, 2020, Plaintiff filed a dispute with the Consumer Financial Protection Bureau's ("CFPB") online dispute portal pertaining to the fact that the sealed Eviction Record had been included in Defendant's report. (*Id*. ¶ 27.) On June 29, 2020, Defendant responded to Plaintiff's dispute indicating that the eviction information had been removed from Plaintiff's report by LexisNexis before Defendant even received the CFPB dispute. (*Id*. ¶ 30.)

On July 2, 2021, Plaintiff filed this action against Defendant for violation of § 1681e(b) of the Fair Credit Reporting Act (the "FCRA"). ("Compl.," ECF No. 1.) Defendant answered, (ECF

No. 4), the parties proceeded to discovery, and thereafter Defendant filed the Motion for Summary Judgment now pending before the Court.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment was entered." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The party moving for summary judgment has the initial burden of establishing its right to summary judgment. *See Celotex Corp.*, 477 U.S. at 323. Once the movant meets its threshold burden under Rule 56, the non-moving party must present evidence to establish a genuine issue as to a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). But a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to material facts."). The non-moving party must point to "concrete evidence in the record"—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg, 594 F.3d 210, 227* (3d Cir. 2010) ("[S]peculation and conjecture may not defeat summary judgment." (citation omitted)).

### III.  <u>DISCUSSION</u>

Plaintiff alleges that Defendant willfully and negligently failed to comply with the requirements imposed on consumer reporting agencies by Section 1681e(b) of the FCRA. (Compl. ¶ 26.) Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Negligent noncompliance with Section 1681e(b) consists of the following four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010). Willful violations of Section 1681e(b) "require the additional showing that the defendant acted knowingly or with reckless disregard of the statute's terms." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 343 (3d Cir. 2022) (citing *Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014)).

### a.  CAUSATION

In the case at bar, Defendant does not contest the first three elements of Plaintiff's negligent violation of Section 1681e(b) claim. Rather, Defendant argues that summary judgment is warranted because Plaintiff has failed to establish element four: that her injury was caused by Defendant's inaccurate report. (MSJ at 4–6.) Defendant contends that there are "obvious other independent causes for the denial of her application"—namely, her poor credit history, including a TransUnion credit score of below 470 and outstanding debts totaling more than $18,000.  (MSJ at 5; *see also* Def. SOF ¶¶ 11–13.) According to Defendant, Plaintiff has not presented any

testimony or evidence from Sunshine Apartments that the denial of her rental application was due to the Eviction Record; rather, "the only basis" for this allegation is "her own belief." (*Id.*)

The Court disagrees. In addition to Plaintiff's deposition testimony that she was denied housing due to the Eviction Record, (Pl. Depo. at 178:6–21, 189:20–25), Plaintiff also attached a text message exchange, in which the manager of the Sunshine Apartments sent Plaintiff a photo of the Eviction Record accompanied with the following message: "The person in charge denied your application sorry. You will receive a denied [sic] letter next week," (*see* ECF No. 41-7 at *15). Thus, the Court finds that a genuine dispute of material fact remains as to whether Defendant's inclusion of the sealed Eviction Record in its consumer report caused Plaintiff's injury (i.e. the denial of her rental application). Summary judgment is thus inappropriate on this basis.

### b. REASONABLE PROCEDURES

Defendant also argues that summary judgment is warranted because Defendant has demonstrated as a matter of law that it has reasonable procedures in place to ensure the maximum possible accuracy of the information it includes in its consumer report. (MSJ at 6–12.) The Third Circuit has cautioned that "the reasonableness of a credit reporting agency's procedures is "normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Cortez*, 617 F.3d at 709 (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)); *see also O'Brien v. Equifax Information Services*, 382 F. Supp. 2d 733, 736 (E.D. Pa. 2005) ("Typically, the question of whether a credit reporting agency followed reasonable procedures is reserved for a jury."). Without deciding on a "reasonable procedures" standard, the Third Circuit explained that there are "three different approaches that various courts have taken in determining if a plaintiff [] has introduced sufficient evidence to reach the jury" on this issue. *Id.* at 709–10. They are: "[1] that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures; [2] that the jury

may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or [3] that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." *Id*. at 710.

Absent unquestionable evidence from Defendant as to the procedures it employs to verify the information it receives from LexisNexis, the Court also finds summary judgment inappropriate on this basis. Indeed, Defendant appears to concede that it does not employ *any* procedures to ensure the maximum possible accuracy of the LexisNexis reports. (MSJ at 8.) Rather, Defendant contends that because it possesses "hundreds of thousands of reports," it would be "impractical, if not impossible" for it to have "second guessed the accuracy of LexisNexis's data . . . ." (*Id*.) While the Court is sympathetic to Defendant's argument, it is not supported by the case law in this Circuit.

Defendant cites an unpublished case from this district in which the district court found a credit reporting agency's reliance on information received from Bank of America to be reasonable as a matter of law. (*Id*. at 9 (citing *Serfess v. Equifax Credit Info. Servs.*, No. 13-406, 2014 WL 4272032, at *6 (D.N.J. Aug. 28, 2014).) However, in that case, the district court reasoned that the agency's reliance was reasonable "particularly in light of [Bank of America's] re-affirmance of the alleged accuracy of the information on seven separate occasions." *Id.*

Here, by contrast, Plaintiff has pointed out that Defendant's contract with LexisNexis repeatedly disclaims the accuracy of the data it provides. (SSOF ¶ 6; *see also* "LexisNexis Contract," ECF No. 41-5.) The contract provides: "Customer acknowledges and agrees that LN obtains its data from third-party sources, which may or may not be completely thorough and accurate, and that Customer shall not rely on LN for the accuracy or completeness of information supplied through the LN Services." (LexisNexis Contract ¶ 4.) It further provides that LexisNexis "does not guarantee or warrant" the "correctness" of the information it provides, (*id.* ¶ 11(iii)), and

"disclaims all representations and warranties of any kind or nature" including with respect to the "correctness" of the data it provides, (*id.* ¶ 11(ii)). Defendant also conceded that LexisNexis does not provide it with information as to the "accuracy rate" of its data. (SSOF ¶ 9; Resp. to SSOF ¶ 9.)

Despite these provisions, Defendant contends that it has "never been 'on notice' regarding the accuracy of the information its vendors provide" and that the above language from their contract with LexisNexis is nothing more than a "boilerplate disclaimer." (Resp. to SSOF ¶¶ 1, 6–8.) However, as one court in this Circuit explained, "[n]o Third Circuit court has held that a plaintiff must prove that a [credit reporting agency] had notice of an inaccuracy and failed to act before it can be held liable under § 1681e(b)." *Dively v. Trans Union, LLC*, No. 11-3607, 2012 WL 246095, at *3 (E.D. Pa. Jan. 26, 2012); *see also O'Connor v. Trans Union Corp.*, No. Civ. 97–4633, 1999 WL 773504, at *4 (E.D. Pa. Sept. 29, 1999) (same).

The Court finds that there remain questions of fact as to what procedures, if any, Defendant employed and whether it ought to have done more to verify the accuracy of LexisNexis's data. Thus, summary judgment must be denied.[1] *See McGrath v. Credit Lenders Serv. Agency, Inc.*, No. 20-2042, 2022 WL 580566, at *11 (E.D. Pa. Feb. 25, 2022) (denying summary judgment where agency did not verify the information it received from a third party and provided to its customers and simply argued that it should not be required to do anything more); *Ocasio v. CoreLogic Credco, LLC*, No. 14-1585, 2015 WL 5722828, at *4 (D.N.J. Sept. 29, 2015) (denying summary judgment and collecting cases for the proposition that resellers of consumer credit information must do more than simply reproduce information furnished to them); *Sheldon v. Experian Info.*

---

[1] In light of genuine issues of material fact as to Defendant's knowledge and procedures, the Court also denies summary judgment as to Plaintiff's allegation that Defendant's violation was willful.

*Sols., Inc.*, No. 08-5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (denying summary judgment where agency did not check the accuracy of information it receives from third parties); *Perez v. Trans Union, LLC*, 526 F. Supp. 2d 504, 509 (E.D. Pa. 2007), abrogated on other grounds by *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) (same).[2]

---

[2] Defendant argues in its Reply brief that "[t]he law is clear" that a credit reporting agency may rely on information gathered by outside entities so long as the source was not known to be unreliable and the information was not inaccurate on its face or inconsistent with other information possessed by the agency. (Reply at 6.) However, none of the law that Defendant cites is from this Circuit. (*Id*. (citing cases from the Sixth Circuit, the Western District of Wisconsin, the Seventh Circuit, and the Central District of California).) As noted above, numerous courts in this Circuit have reached the opposite conclusion. Furthermore, there is at least a genuine issue of fact as to whether Defendant knew the information is received from Lexis may be inaccurate or unreliable.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**. An appropriate Order will accompany this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 31, 2024